UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RACHAEL MARIE GUALANO,

                             Plaintiff,

           v.

COMMISSIONER OF SOCIAL SECURITY,

                             Defendant.
_____

DECISION & ORDER

18-CV-701MWP

## **PRELIMINARY STATEMENT**

        Plaintiff Rachael Marie Gualano ("Gualano") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Supplemental Security Income Benefits ("SSI"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 1, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket # 16).

        Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 9, 14). For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

# DISCUSSION

## I. Standard of Review

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). When assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations;

(4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform his or her past work; and

(5) if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t

3

step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

II.     **Gualano's Contentions**

Gualano contends that the ALJ's determination that she is not disabled is not supported by substantial evidence and is the product of legal error. (Docket ## 9-1, 15). In his decision, the ALJ determined that Gualano retained the RFC to perform light work involving simple, routine tasks requiring only simple work-related decisions and occasional contact with supervisors and coworkers, but was unable to perform positions requiring tandem work, contact with the public, assembly lines or conveyor belts. (Tr. 20). Gualano challenges this determination on the grounds that the ALJ failed to properly apply the treating physician rule to the opinion rendered by her licensed mental health therapist Cortney Bota ("Bota"), which was cosigned by her treating psychiatrist, Viktor Yatsynovich ("Yatsynovich"), MD. (Docket ## 9-1 at 12-22; 15 at 1-4). According to Gualano, the ALJ treated the opinion as one from an unacceptable medical source rather than from a treating psychiatrist. (*Id.*). Further, Gualano maintains that the ALJ failed to consider the requisite factors in determining to give the opinion "little weight" and failed to provide good reasons for discounting the opinion. (*Id.*). Gualano also contends that the ALJ's RFC assessment is not supported by any of the medical opinions contained in the record. (Docket ## 9-1 at 23-28; 15 at 5-6). Finally, Gualano challenges the ALJ's RFC determination on the grounds that he failed to evaluate an opinion submitted by her primary care physician Sami A. Raphael ("Raphael"), MD. (Docket ## 9-1 at 28-29; 15 at 6-7).

4

**III. Analysis**

An individual's RFC is his or her "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999) (quoting SSR 96–8p, 1996 WL 374184, *2 (July 2, 1996)). When making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)). "To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms." *Stanton v. Astrue*, 2009 WL 1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370 F. App'x 231 (2d Cir. 2010).

An ALJ should consider "all medical opinions received regarding the claimant." *See Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005) (citing 20 C.F.R. § 404.1527(d)[1]). Generally, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) ("[t]he opinion of a claimant's treating physician as to the nature and severity of an impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record") (internal quotations and brackets omitted). Thus, "[t]he opinion of a treating physician is

---

[1] This regulation applies to claims filed before March 27, 2017. For claims filed on or after March 27, 2017, the rules in 20 C.F.R. § 404.1520c apply.

generally given greater weight than that of a consulting physician[] because the treating physician has observed the patient over a longer period of time and is able to give a more detailed picture of the claimant's medical history." *Salisbury v. Astrue*, 2008 WL 5110992, *4 (W.D.N.Y. 2008).

"An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give to the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). The ALJ must explicitly consider the "*Burgess* factors":

>   (1)   the frequency of examination and length, nature, and extent of the treatment relationship,
>
>   (2)   the amount of medical evidence supporting the opinion,
>
>   (3)   the consistency of the opinion with the record as a whole,
>
>   (4)   whether the opinion is from a specialist, and
>
>   (5)   whatever other factors tend to support or contradict the opinion.

*Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 199 (2d Cir. 2010); *see also Estrella v. Berryhill*, 925 F.3d at 95-96 ("[f]irst, the ALJ must decide whether the opinion is entitled to controlling weight[;] . . . if the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it[;] [i]n doing so, it must 'explicitly consider' the . . . nonexclusive '*Burgess* factors'"). "At both steps, the ALJ must 'give good reasons in its notice of determination or decision for the weight it gives the treating source's medical opinion.'" *Estrella*, 925 F.3d at 96 (quoting *Halloran v. Barnhart*, 362 F.3d at 32); *Burgess v. Astrue*, 537 F.3d 117, 129-30 (2d Cir. 2008) ("[a]fter considering the above factors, the ALJ must comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion[;] . . . [f]ailure to provide such 'good reasons' for not crediting the opinion of a

claimant's treating physician is a ground for remand") (citations and quotations omitted); *Wilson v. Colvin*, 213 F. Supp. 3d 478, 482-83 (W.D.N.Y. 2016) ("an ALJ's failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight given denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based on the record") (alterations, citations, and quotations omitted). "This requirement allows courts to properly review ALJs' decisions and provides information to claimants regarding the disposition of their cases, especially when the dispositions are unfavorable." *Ashley v. Comm'r of Soc. Sec.*, 2014 WL 7409594, *1 (N.D.N.Y. 2014) (citing *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)).

The record in this case demonstrates that Bota provided mental health counseling to Gualano on a monthly basis beginning in October 2015 and continuing through the time of the administrative hearing in May 2017. (Tr. 29, 364-78). Gualano also received psychiatric treatment, including medication management, from Yatsynovich during that same general time period. (Tr. 340-49, 370-78). On April 20, 2017, Bota authored an opinion assessing Gualano's work-related mental limitations. (Tr. 355-60). In the opinion, Bota opined that Gualano suffered from post-traumatic stress disorder, panic disorder with agoraphobia, and unspecified depressive disorder. (*Id.*). According to Bota, Gualano's treatment included solution-focused, person-centered talk therapy, cognitive behavioral therapy, and psychotropic medications, which had resulted in very limited progress. (*Id.*).

Bota opined that Gualano had no useful ability to function[2] in her ability to maintain attention for two-hour segments, maintain regular attendance and be punctual within customary, usually strict tolerances, sustain an ordinary routine without special supervision,

---

[2] This phrase was defined to indicate an "extreme limitation, mean[ing] [the] patient cannot perform this activity in a regular work setting." (*Id.*).

7

work in coordination with or proximity to others without being unduly distracted, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, understand, remember, and carry out detailed instructions, set realistic goals or make plans independently of others, deal with stress of semiskilled and skilled work, travel in unfamiliar places, and use public transportation. (*Id.*). Additionally, Bota opined that Gualano would be unable to meet competitive standards[3] in her ability to remember work-like procedures, understand, remember, and carry out very short and simple instructions, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes, respond appropriately to changes in a routine work setting, deal with normal work stress, be aware of normal hazards and take appropriate precautions, and interact appropriately with the general public. (*Id.*). Bota indicated that Gualano was seriously limited[4] in her ability to make simple work-related decisions and ask simple questions or request assistance, and was limited but satisfactory in her ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. (*Id.*).

In the opinion, Bota indicated that Gualano's limitations were caused by her "significant anxiety and panic attack symptoms," which presented a barrier to Gualano's thought process, interaction with others, and daily functioning. (*Id.*). Bota also opined that Gualano's symptoms prevented her from leaving her home except for medical appointments. (*Id.*). Bota indicated that Gualano's psychiatric impairments caused headaches, chest pain, shortness of

---

[3] This phrase was defined to mean the "patient cannot satisfactorily perform this activity independently, appropriately, effectively and on a sustained basis in a regular work setting." (*Id.*).

[4] This phrase was defined to mean the patient's "ability to function in this area is seriously limited and would frequently be less than satisfactory in any work setting." (*Id.*).

breath and arm pain, and she expected that Gualano would be absent from work more than four days per month. (*Id.*). According to Bota, Gualano suffered from marked limitations in her ability to engage in activities of daily living and maintain social functioning and concentration, persistence and pace. (*Id.*). She opined that Gualano was unable to function independently outside the home and was unable to engage in full-time competitive employment. (*Id.*). On April 25, 2017, Yatsynovich "read and approved" the opinion authored by Gualano.[5] (Tr. 369).

In his decision, the ALJ summarized in cursory fashion records of Gualano's appointments with Yatsynovich contained in the record,[6] mentioned without discussing the opinion authored by Bota, as well as an opinion authored by a state agency consultant Dr. Tzetzo ("Tzetzo"), a non-examining physician, and more extensively summarized an evaluation and report provided by state agency consultant Dr. Susan Santarpia ("Santarpia"), an examining psychologist. (Tr. 19, 21-22). Ultimately, the ALJ gave some weight to the opinions of the state agency consultants Tzetzo and Santarpia and "little weight" to the opinion authored by Bota. (Tr. 22).

> With respect to his weighing of Bota's opinion, the ALJ stated:
>
> The standard form checklist by the claimant's LMHC is also given little weight. Ex. 10F. The source is an unacceptable medical source, and the limits are unsupported: status checks were well below mild and suggested only a few symptoms. Ex. 7F, pp. 3, 5, 7. There are no medical signs of illness commensurate with limitations assessed in this form. As the courts have long recognized, form reports, in which a source's only obligation is to fill in a blank or check off a box, are entitled to little weight in the

---

[5] The opinion authored by Bota and submitted into the record is virtually identical to the opinion authored by Bota and approved by Yatsynovich. (*Compare* Tr. 355-60 *with* Tr. 364-69). The only apparent difference is that question 21 ("what is the earliest date these limitations apply?") is completed on the opinion approved by Yatsynovich. (*Id.*).

[6] It does not appear that Bota's notes from her therapy sessions with Gualano are contained in the record. The ALJ should consider whether to attempt to obtain those notes on remand.

9

> adjudicative process. . . . The same checklist was then co-signed by
> a doctor, but the probative weight does not change. Ex. 11F.

(Tr. 22).

Gualano challenges the ALJ's weighing of the opinion authored by Bota and cosigned by Yatsynovich on the grounds that the ALJ failed to properly treat the opinion as one from a treating psychiatrist. (Docket ## 9-1 at 12-22; 15 at 1-4). The government does not appear to dispute – nor should it – that the opinion should be assessed under the treating physician rule because Gualano's treating psychiatrist reviewed and cosigned the report. (Docket # 14-1 at 16-18); *see Fritty v. Berryhill*, 2019 WL 289779, *4 (W.D.N.Y. 2019) ("where the opinion is co-signed by a treating physician, . . . the opinion should be evaluated as having been the treating physician's opinion") (internal quotations omitted); *King v. Comm'r of Soc. Sec.*, 350 F. Supp. 3d 277, 282 (W.D.N.Y. 2018) ("medical source statements cosigned by a treating physician should be evaluated as having been the treating physician's opinion") (quotation omitted). Rather, the government maintains that, in accordance with the treating physician rule, the ALJ provided good reasons for declining to give the opinion controlling weight. (Docket # 14-1 at 16-18).

The fallacy in the government's position is that it assumes, without discussion or support, that the ALJ did in fact apply the treating physician rule to the opinion. Little in the decision, however, supports that assumption. For instance, the ALJ does not mention or recite the treating physician rule or its considerations in the decision. Although the failure "to refer explicitly to each regulatory factor in determining the weight to assign to a treating physician's opinion" does not warrant remand where the decision, read in its entirety, supports the conclusion that the ALJ "conscientiously applied the substance of the treating physician rule," *Jasen v. Comm'r of Soc. Sec.*, 2017 WL 3722454, *11 (W.D.N.Y. 2017); *see Estrella*, 925 F.3d

10

at 96 ("failure to 'explicitly' apply the *Burgess* factors when assigning weight . . . is a procedural error" but does not require remand if "a searching review of the record assures [the court] that the substance of the treating physician rule was not traversed") (internal quotations omitted), I cannot conclude that the treating physician rule was properly applied in this case.

Not only is any explicit reference to the treating physician considerations absent from the decision, but so too is any discussion demonstrating that the ALJ was aware of and weighed those considerations. For example, nowhere in the decision does the ALJ discuss the "frequency, length, nature and extent of treatment" that Yatsynovich provided to Gualano. *See*, *e.g.*, *Estrella*, 925 F.3d at 97 (failure to address relationship between treating source and claimant is "especially relevant" because this factor "is of heightened importance" in cases involving mental illness). In fact, the ALJ refers to Yatsynovich merely as a "doctor," rather than as a psychiatrist with specialized knowledge relating to mental health impairments.

As the ALJ made clear, an opinion from Bota was not entitled to controlling weight because Bota was an "unacceptable medical source." (Tr. 22). He discounted her opinion because it was rendered in a "checklist" format[7] and because the limitations assessed were not supported by the "status checks" recorded in the treatment notes. (*Id.*). Although the ALJ acknowledged that Yatsynovich cosigned the opinion, he observed that this fact did not alter the "probative weight" of the opinion. (*Id.*). This ambiguous observation provides no insight into whether the ALJ recognized that Yatsynovich's signature on Bota's opinion transformed the opinion into one authored by an acceptable medical source and thus entitled to controlling weight

---

[7] Although Bota's opinions were provided in a form that required her to "check" various boxes, she also provided narrative explanations to support her opinions. For instance, with respect to her opinions that Gualano suffered from significant impairments in her mental ability to engage in unskilled work, Bota indicated that Gualano's limitations were caused by her anxiety and panic attack symptoms, which were barriers to her thought process, interactions with others, and daily functioning. (Tr. 357). In any event, "it is well settled that the use of [a check-box] form is not a valid reason to reject an otherwise relevant opinion." *Lewis v. Colvin*, 2018 WL 1044562, *3 (W.D.N.Y. 2018).

provided it was well-supported by and not inconsistent with the record.[8] *See Lewis v. Colvin*, 2018 WL 1044562 at *3 ("[a] treating physician's opinion – regardless of whether the physician authored the opinion, or cosigned it – is entitled to controlling weight if it is well supported by medical findings, and is not inconsistent with other substantial evidence").

In the absence of any further discussion of the significance of Yatsynovich's signature, it is unclear whether the ALJ considered the opinion to be from an acceptable medical source and entitled to assessment under the treating physician rule. *See Johnson v. Colvin*, 2016 WL 659664, *3 (D. Conn. 2016) ("the co-signing of [the] opinions by a physician raises the prospect that they should be evaluated under the treating physician rule[,] . . . [and] the ALJ should have explained whether or not [he] considered these opinions to be the opinion of an appropriate medical source, and if not, then why") (internal quotations omitted). Because I am unable to conclude that the ALJ recognized the applicability of the treating physician rule or that he applied it to Yatsynovich's opinion in this case, remand is required. *Baldwin v. Colvin*, 2016 WL 7018520, *10 (D. Conn. 2016) (remanding where the ALJ failed to address "the import of" the physician's signature and the [c]ourt was unable to determine whether the ALJ applied the treating physician rule); *Johnson v. Colvin*, 2016 WL 659664 at *3 (remanding where it was not clear whether the ALJ applied the treating physician rule to the cosigned opinion; "[a]fter acknowledging in passing that the opinions were co-signed by a physician, the ALJ . . . made no mention of the treating physician rule[,] . . . [and] [w]hile the ALJ does discuss whether the opinions are inconsistent with other evidence, the ALJ did not make any finding as to whether

---

[8] The record suggests that the ALJ was aware that Yatsynovich was a treating psychiatrist – indeed, he referred to Yatsynovich as "an acceptable medical source" elsewhere in his decision (Tr. 18 (citing Tr. 361-62)), and during the hearing he recognized that "the psychiatrist" reviewed and approved Bota's opinion (Tr. 44). What is unclear is whether the ALJ understood that Yatsynovich's review and approval of the opinion required application of the treating physician rule to the opinion and, if so, whether it was actually applied in this case.

the ALJ considered [the cosigned opinions] to be those of an acceptable medical source"); *see also Alexander v. Comm'r of Soc. Sec.*, 2014 WL 7392112, *6 (D. Vt. 2014) (remand is necessary where "[t]he court cannot be confident that [plaintiff] received the treating physician rule's procedural advantages, nor can it conclude that the substance of the treating physician rule was not traversed") (internal quotations and brackets omitted); *Santiago v. Comm'r of Soc. Sec.*, 2014 WL 4793448, *13 (E.D.N.Y. 2014) ("the [c]ourt is not confident that the ALJ properly adhered to the treating physician rule, and this error constitutes an independent ground for remand").

Having concluded that remand is warranted, I decline to reach Gualano's remaining contentions. *See Erb v. Colvin*, 2015 WL 5440699, *15 (W.D.N.Y. 2015) (declining to reach remaining challenges to the RFC and credibility assessments where remand requiring reassessment of RFC was warranted).

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 14)** is **DENIED**, and Gualano's motion for judgment on the pleadings **(Docket # 9)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

                                              *s/Marian W. Payson*
                                              MARIAN W. PAYSON
                                           United States Magistrate Judge

Dated: Rochester, New York
        December 5, 2019